UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

------------------------------------------------------

SHANNAH ARCENEAUX and FALLON
FREDERICK, on their own behalf and on behalf
of a class of similarly situated individuals,

            Plaintiff,

      v.

MIDSOUTH BANK, N.A,

            Defendant.

------------------------------------------------------

**COMPLAINT**

## <u>CLASS ACTION COMPLAINT</u>

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

–President George H. W. Bush, July 26, 1990

**BIZER & DEREUS**
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

1.      Plaintiff SHANNAH ARCENEAUX (herein after "MS. ARCENEAUX") is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her expressed and most effective means of communication. Defendant has discriminated against MS. ARCENEAUX by failing and/or refusing to provide auxiliary aids and services necessary to ensure effective communication regarding banking and financial matters over the telephone. As a result, MS. ARCENEAUX has been unable to meaningfully communicate with defendant in a manner equivalent to that of non-deaf consumers.

2.      Plaintiff FALLON FREDERICK (hereinafter "MS. FREDERICK") is a hard of hearing individual who communicates primarily in American Sign Language ("ASL"), which is her expressed and most effective means of communication. Defendant has discriminated MS. FREDERICK by failing and/or refusing to provide auxiliary aids and services necessary to ensure effective communication regarding banking and financial matters over the telephone. As a result, MS. FREDERICK has been unable to meaningfully communicate with defendant in a manner equivalent to that of non-hard of hearing consumers.

3.      MS. ARCENEAUX and MS. FREDERICK, both on their own behalf and on behalf of a class of similarly situated individuals, seek declaratory, injunctive, and equitable relief and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*.; and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794.

## THE PARTIES

4.      Plaintiffs are individuals residing in Scott, Louisiana.

5.      MS. ARCENEAUX is profoundly deaf and communicates primarily in American Sign Language. She is substantially limited in the major life activities of hearing and speaking and is a

qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

6.      MS. FREDERICK is hard of hearing and communicates primarily in American Sign Language. She is substantially limited in the major life activities of hearing and speaking and is a qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

7.      MIDSOUTH BANK, N.A. (hereinafter "MIDSOUTH") is a financial institution that owns and operates places of public accommodation within the State of Louisiana.

8.      MIDSOUTH provides banking and financial services to individuals across the State of Louisiana and the State of Texas.

9.      As the operator and administrator of banking and financial services, MIDSOUTH is obligated to comply with the requirements of the ADA.

## JURISDICTION & VENUE

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law.

11.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because MIDSOUTH resides within the jurisdiction of this District and a substantial part of the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

12.      Plaintiffs require auxiliary aids and services to communicate effectively with non-deaf and non-hard of hearing individuals.

13.      MS. ARCENEAUX cannot use a conventional telephone to call other people or businesses. Instead, like most deaf individuals, she relies on the use of a telecommunications relay services to make telephone calls to places of public accommodation.

14.      MS. FREDERICK can use a conventional telephone to call other people or businesses.

However, when MS. FREDERICK uses a conventional telephone to call other people or businesses, MS. FREDERICK requires reasonable accommodations in the form of the other party speaking loudly, slowly, and responding patiently when MS. FREDERICK requires him/her to repeat a word or sentence.

15.    Title IV of the ADA, codified at 47 U.S.C. § 225, established  nationwide telecommunications  relay services (TRS), which are "telephone  transmission  services that provide  the ability  for an individual  who is deaf, hard of hearing,  deaf-blind,  or who has a speech  disability to engage  in communication  by wire or radio with one or more individuals,  in a manner  that is *functionally  equivalent* to the ability of a hearing individual who does not have a speech disability  to communicate  using voice communications services by wire or radio."  47 U.S.C. § 225(a)(3) (emphasis added).

16.    There are many forms of TRS available for use, depending on the individual's communication needs and preference.[1]

17.    One form of TRS is called the Video Relay Service (VRS).  "This Internet-based form of TRS allows persons whose primary language is American Sign Language (ASL) to communicate with the CA [(Communications Assistant)] in AS using video conferencing equipment.  The CA speaks what is signed to the called party, and signs the called party's response back to the caller."  *Id.*

18.    Individuals with or without a hearing or speech impairment may initiate or receive a call through any TRS.

19.    The FCC has promulgated regulations to implement Title IV of the ADA, 47 U.S.C. § 225, which are codified at 47 C.F.R. §§ 64.601-64.606.

20.    FCC regulations require that communications assistants "be sufficiently trained to effectively meet the specialized communications needs of individuals with hearing and speech

---

[1] *See* Federal Communications Commission (FCC) TRS factsheet at http://www.fcc.gov/cgb/consumerfacts/trs.html (attached as Exhibit A).

disabilities." 47 C.F.R. § 64.604(a)(l )(i).

21.    FCC regulations require TRS providers to ensure that "VRS CAs are qualified interpreters ... able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary." 47 C.F.R. § 64.604(a)(l )(iv).

22.    FCC regulations prohibit CAs "from disclosing the content of any relayed conversation regardless of content, and ... from keeping records of the content of any conversation beyond the duration of a call ...." 47 C.F.R. § 64.604(a)(2)(i).

23.    FCC regulations prohibit CAs from "intentionally altering a relayed conversation" and require TRS providers to take appropriate measures to ensure that confidentiality of TRS users is maintained.  47 C.F.R. § 64.604(a)(2)(ii).

24.    Pursuant to Department of Justice regulations, places of public accommodations, including banks, must accept relay calls.  28 C.F.R. § 36.303(d)(4).

25.    MS. ARCENEAUX and MS. FREDERICK have a bank account with MIDSOUTH.

26.    On May 31, 2017, MS. ARCENEAUX attempted to place a TRS call to MIDSOUTH to inform it that she and MS. FREDERICK were going out of town on vacation.

27.    MS. ARCENEAUX wanted to ensure that her and MS. FREDERICK's debit cards would accept transactions while they were out of town.

28.    Upon receipt of her call, MS. ARCENEUX she gave MIDSOUTH her account number. MIDSOUTH's operator did not ask any questions to verify who MS. ARCENEUX was. Instead, MIDSOUTH's operator put MS. ARCENEUX on hold.

29.    After keeping MS. ARCENEUX on hold, MIDSOUTH's operator told MS. ARCENEUX that MIDSOUTH could not provide MS. ARCENEUX with assistance over the phone because they refused to accept "third party" calls.

30.    MS. ARCENEUX explained to MIDSOUTH's operator that the Americans With Disabilities act requires banks to accept relay calls and to by equal access. Despite this explanation, MIDSOUTH's operator still refused to accept MS. ARCENEUX's call or to process her request related to her debit cards.

31.    Given MIDSOUTH's refusal to communicate with MS. ARCENEUX, MS. FREDERICK decided to call on their behalf to relay to MIDSOUTH the need for a notification related to plaintiffs' debit cards.

32.    MS. FREDERICK is hard of hearing, but can use her "voice" to communicate. However, due to her disability, communicating verbally over the telephone is extremely difficult and time consuming for MS. FREDERICK.

33.    When MS. FREDERICK called MIDSOUTH, she proceeded through the verification process. MIDSOUTH asked MS. FREDERICK for plaintiffs' account number, MS. FREDERICK's mother's maiden name, the last three transactions made on the account, birthday, and drivers' license number.

34.    After going through the laborious verification process, MS. FREDERICK explained that plaintiffs were traveling out of state to Alabama and would like their debit cards to work while they were traveling.

35.    MIDSOUTH put MS. FREDERICK on hold for an extended period of time. She was on phone with them for at least 45 minutes.

36.    After being on hold for an extended period of time, the same man who MS. ARCENEUX spoke with came on the phone and told MS. FREDERICK that it was not possible for MS. FREDERICK to put a travel notification on plaintiffs' account over the phone and that she would have to go in to her local bank branch and see the branch manager.

37.     Upon information and belief, MS. FREDERICK was declined the ability to remotely put a travel notification on plaintiffs' account because MS. ARCENEUX originally called via TRS.

38.     When MS. FREDERICK realized it was the same operator that MS. ARCENEUX spoke with, she went on to explain that MIDSOUTH was discriminating against plaintiffs because any hearing person who goes through the verification process would have no problem putting a travel notification on their account.

39.     Plaintiffs' attempts to convince MIDSOUTH to comply with the ADA "pre-suit" failed.

40.     Plaintiffs' attempts to convince MIDSOUTH to comply with the ADA "pre-suit" amounted to a futile gesture.

41.     MIDSOUTH refused to accept MS. ARCENEUX's call because she was using TRS.

42.     MIDSOUTH discriminated against MS. ARCENEUX on the basis of her disability.

43.     By unnecessarily placing MS. FREDERICK on hold for multiple occasions, MIDSOUTH subjected MS. FREDERICK to a longer wait time and lower quality service.

44.     Upon information and belief, a non-hard of hearing individual would not have been put on hold multiple times while trying to perform a simple transaction such as placing a travel notification on their account.

45.     Upon information and belief, a quantifiably-significant difference exists between the different wait times for non-disabled customers and hard of hearing customers.

46.     Therefore, MS. FREDERICK was discriminated against on the basis of disability as a result of the longer-than-usual wait time. MS. FREDERICK intends on proving paragraphs 43-45 through the use of statistical analysis of defendant's data.

47.     MS. FREDERICK was also discriminated against as a result of her association with MS. ARCENEAUX.

48.     Due to MIDSOUTH's discrimination and failure to make reasonable accommodations, plaintiffs and the covered class have suffered an invasion of their civil rights and were denied the ability to equally participate in the banking services offered by defendant.

49.     As a result of MIDSOUTH's failure to provide effective communication, plaintiffs and the covered class received services that were objectively substandard and were inferior to those provided to individuals who are hearing. Plaintiffs and the covered class were subjected to discriminatory treatment because of their disability.

50.     The harm sustained by plaintiffs and the plaintiff class – the inability to access the services and accommodations offered by MIDSOUTH – is the expected and foreseeable consequence of MIDSOUTH's failure to comply with the requirements and mandates of the ADA. The statute and accompanying regulations exist to ensure that those with communication limitations will have full use of places of public accommodations. If MIDSOUTH failed to adhere to its legal obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by plaintiffs in this lawsuit.

51.     Due to their ongoing banking relationship, plaintiffs will interact with MIDSOUTH again in the near future. When plaintiffs interact with MIDSOUTH again in the near future, plaintiffs expect and reasonably foresee that MIDSOUTH will again fail to comply with the requirements of the ADA.

52.     Under Title 42 U.S.C. § 12181(7), a bank is clearly a place of public accommodation:

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or **other sales or rental establishment**;

(F) a laundromat, dry-cleaner, **bank**, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;[2]

53.     There is a clear nexus between the calls made by plaintiffs to defendant and a place of

---

[2] Emphasis added.

public accommodation, namely, a bank.

## CLAIM 1: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

54.    At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, *et seq*. has been in full force and effect and has applied to defendant's conduct.

55.    At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the defendant's conduct.

56.    At all times relevant to this action, plaintiffs have been substantially limited in the major life activities of hearing and speaking, and are an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2). MIDSOUTH owns, leases, and/or operates places of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

57.    Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

58.    Federal regulations implementing Title III of the ADA provide that a public "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

59.    Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" 28 C.F.R. § 36.303(a).

60.    Pursuant to Department of Justice regulations, places of public accommodations,

including banks, must accept relay calls.  28 C.F.R. § 36.303(d)(4).

61.    By and through their actions set forth above, MIDSOUTH discriminated against plaintiffs, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

62.    MS. FREDERICK was also discriminated against as a result of her association with MS. ARCENEAUX.

63.    As set forth above, absent injunctive relief there is a clear risk that MIDSOUTH's actions will recur against plaintiffs.

64.    Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

65.    At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to MIDSOUTH's conduct.

66.    At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to MIDSOUTH's conduct.

67.    At all times relevant to this action, plaintiffs have had substantial limitations to the major life activities of hearing and speaking have been individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

68.    At all times relevant to this action, MIDSOUTH have been offering programs, services, activities, or accommodations receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

69.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or her disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

70.     The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

71.     MIDSOUTH discriminated against MS. ARCENEAUX, on the basis of disability, in violation of 29 U.S.C. § 794.

72.     MS. ARCENEAUX is therefore entitled to seek and recover compensatory damages (including nominal damages) for the injuries and loss he sustained as a result of MIDSOUTH's discriminatory conduct as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

73.     MS. ARCENEAUX is further entitled to injunctive relief, as well as an award of attorneys' fees, and costs (including expert expenses) pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

## CLASS ACTION ALLEGATIONS

74.     In addition, plaintiffs also seek injunctive relief and reasonable attorneys' fees and costs on behalf of a Class of persons of that have been discriminated against by MIDSOUTH.

75.     The Class (hereinafter "the Class") consists of all deaf persons who have had cause to interact with MIDSOUTH via relay call and all hard of hearing individuals who have had cause to interact with MIDSOUTH via relay call or conventional telephone.

76.     Upon information and belief, the Class is believed to consist of over one hundred members.

77.     Common questions of law exist as to all members of the Class, and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a.     Whether MIDSOUTH is covered by the ADA and the Rehabilitation Act;

b.      Whether MIDSOUTH has failed to comply with the regulations of the ADA and the Rehabilitation Act by failing to accept relay calls;

c.      Whether MIDSOUTH has failed to comply with the regulations of the ADA and the Rehabilitation Act by failing to make reasonable accommodations for individuals who call via relay call;

d.      Whether MIDSOUTH has failed to comply with the regulations of the ADA and the Rehabilitation Act by failing to make reasonable accommodations for individuals who are hard of hearing and call via conventional telephones;

e.      Whether MIDSOUTH discriminates against hard of hearing individuals under the ADA and the Rehabilitation Act by making them wait for longer periods of time on hold;

f.      Whether MIDSOUTH has failed to take steps to ensure that deaf and hard of hearing individuals have access to effective communication when interacting with the MIDSOUTH over the telephone;

g.      Whether MIDSOUTH has made reasonable modifications to its policies, practices, and procedures when such modifications are necessary to afford such programs, services, and accommodation to individuals with disabilities;

h.      What injunctive relief should be awarded to the Class; and

i.      What quantum of attorneys' fees/costs should be awarded to the Class counsel.

78.      Plaintiffs' claims are typical of the claims of the members of the Class, as plaintiffs and members of the Class sustained and continue to sustain injuries arising out of MIDSOUTH's failure accept relay calls and commission of disparate impact discrimination against individuals who are hard of hearing, in violation of Federal Law.

79.      Plaintiffs, like all other members of the Class, claim that MIDSOUTH has violated the

ADA and Rehabilitation Act by adopting policies, procedures, and/or practices that violate the requirements of the ADA and the Rehabilitation Act.

80.    Plaintiffs will fairly and adequately protect the interests of the members of the Class, and have retained counsel competent and experienced in the ADA and class action litigation. Plaintiffs have no interests antagonistic to, or in conflict with, those of the Class.

81.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since joinder of all members is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for all members of the Class to individually to redress the wrongs done to them.

82.    There will be no difficulty in the management of this action as a class action. Moreover, judicial economy will be served by the maintenance of this lawsuit as a class action, in that it is likely to avoid the burden which would be otherwise placed upon the judicial system by the filing of numerous similar suits by people across the State of Louisiana. There are no obstacles to effective and efficient management of the lawsuit as a class action.

## **PRAYER FOR RELIEF**

**WHEREFORE, P**laintiffs and the Class respectfully prays that this Court grant the following relief:

a.    Certify a Class Action pursuant to Rule 23(b).

b.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that MIDSOUTH's policies, procedures, and practices have subjected plaintiffs to unlawful discrimination in violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

c.   Issue an injunction forbidding MIDSOUTH from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or individuals associated with them, meaningful access to and full and equal enjoyment of the services offered by MIDSOUTH.

d.   Issue an injunction ordering MIDSOUTH:

    i.  to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against plaintiffs and other deaf or hard of hearing individuals and their companions by failing to provide effective communication;

    ii.  to develop, implement, promulgate, and comply with a policy requiring that MIDSOUTH accept relay calls from deaf or hard of hearing individuals;

    iii.  to develop, implement, promulgate, and comply with a policy requiring that MIDSOUTH not treat deaf or hard of hearing individuals in a manner that results in unnecessary time;

    iv.  to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

    v.  to train all its employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA and the RA;

e.   Award to the Class and Class Counsel:

    i.  Reasonable costs, expert expenses, and attorneys' fees pursuant to the ADA and the RA;

    ii.  Any and all other relief that this Court finds necessary and appropriate.

f.   Award to MS. ARCENEAUX and MS. FREDERICK:

    i.  A reasonable incentive award, not to exceed $10,000.00, for the time, burden, and difficulty of bringing and maintaining this action.

Dated: August 1, 2017

Respectfully Submitted,

**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:/s/ ANDREW D. BIZER
       Andrew D. Bizer